Patricia Kirtley Wells (#013905)
Kirtley Wells Law Office
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 264-7424
E-Mail: tk@kwlolaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda S. Miano, | COMPLAINT |
| Plaintiff, | |
| v. | (Jury Trial Demanded) |
| Megan J. Brennan, Postmaster General, United States Postal Service | |
| Defendant. | |

Plaintiff Linda Miano ("Linda" or "Plaintiff") files her claim for relief against defendant and alleges:

JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 and federal question jurisdiction pursuant to 28 U.S.C. §1332.  This Court also has jurisdiction pursuant to the Vocational Rehabilitation Act of 1973 §§501, 505 as amended, 29 U.S.C.A. §701 ("Rehabilitation Act") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").

2.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).  Plaintiff's intentional infliction of emotional distress claim shares common operative facts.  Resolving the state and federal claims in a single action serves the interests of judicial economy, convenience and fairness to the parties.

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

3.     Venue is proper in the United States District Court of Arizona pursuant to 28 U.S.C. § 1391(b), because the events giving rise to plaintiff's claims occurred in this District.

4.     The matter is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, §§ 704(a) and 706(f)(1) ) (hereinafter "Title VII") and the Rehabilitation Act §791 et seq., ("Rehabilitation Act")  which provides this Court with jurisdiction.

5.     Plaintiff filed a charge of retaliation with the Equal Employment Opportunity department of the United States Postal Service ("USPS") alleging that she suffered retaliation because she previously engaged in protected activity while employed by USPS.

6.     All preconditions to Title VII and the Rehabilitation Act have been satisfied.

7.     Linda has timely complied with the relevant administrative requirements regarding the matters described below, has received a Final Agency Decision regarding her complaints and timely filed this lawsuit.

8.     Defendant's retaliation continues.

### PARTIES

9.     Plaintiff Linda Miano ("Linda" or "Plaintiff") is a U.S. citizen and a resident of Maricopa County in this Judicial District.

10.     Plaintiff is an "eligible employee" within the meaning of the Rehabilitation Act and Title VII in that she engaged in activities protected by the Rehabilitation Act and Title VII by opposing illegal discrimination and/or engaging in activities protected by the participation clauses of Title VII and the Rehabilitation Act.

11.     Defendant Megan J. Brennan is the Postmaster General U.S. Postal Service "("USPS"), a federal agency having its principal place of business in Washington, D.C. with offices in Phoenix, Arizona.

12.     Defendant Brennan is sued for violations of Title VII and the Rehabilitation Act because her agents retaliated against Linda for engaging in activities protected under

Title VII and the Rehabilitation Act including but not limited to the matters listed ¶¶18-70 *infra.*

13.    At all relevant times hereto, the below mentioned supervisors and managers of plaintiff were employees of USPS and acting within the course and scope of their employment.  Thus, Defendant is responsible for their conduct under the doctrine of respondent superior.

14.    Defendant employed more than 300 employees for each working day or more in 20 weeks or more during the preceding year and is therefore an employer pursuant to Title VII.

15.    Plaintiff is informed and believes, and thereon alleges, that defendant is an "employer" within the meaning of the Rehabilitation Act 29 U.S.C.A. §791, et seq.

16.    Defendant is an "industry affecting commerce" within the meaning of the Rehabilitation Act 29 U.S.C.A. §791, et seq. and Title VII, §§701(g)-(h) and 42 U.S.C. §§2000e(g)-(h).

17.    Defendant is a "covered entity" within the meaning of the Rehabilitation Act 29 U.S.C.A. §791, et seq.

### Facts

18.    Linda was hired by Defendant USPS on or about September 30, 2006 as a temporary rural carrier.  On or about September 7, 2013 she became a career rural carrier at the Peoria Post Office.

19.    On approximately August 25, 2017 Linda was assigned to a 204b supervisory training position for 90-days at the Sun City West postal facility.  Despite the fact that she would be working in the supervisor training position Linda volunteered to work as a rural carrier at the Peoria postal facility on Saturdays and other occasions as necessary.

20.    At the time of the assignment Albert Zavala was working as the Officer in Charge ("OIC") at Peoria Main postal facility.  Gustavo Rizo, was the OIC at Sun City West.   Manager Rizo and Zavala recognized that Linda was progressing and doing

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

competent job as a 204b supervisor and determined that Linda's detail as a 204b would be extended until December 31, 2017.

21.     On Friday, November 24, 2017, Linda was working as a rural route carrier and re-injured her thumb.  The original injury occurred on or about January 10, 2017 and was diagnosed as stenosing tenosynovitis and approved as a claim by the Office of Worker's Compensation Programs ("OWCP").

22.     As a result of the re-injury of her thumb Linda was required to wear a brace and was not able to use her thumb.  Specifically, she could work but could not perform activities that required any heavy lifting or application of pressure with her thumb.

23.     Despite the injury to her thumb Linda went to work the following day, November 25, 2017 for approximately five hours and cased her route because she wanted to minimize the impact of her not being able to deliver the route during the holiday week. After working five hours Linda was sent home by Supervisor Collette Baca at the Direction of Zavala.  Linda was required to use sick leave for the entire day contrary to USPS's policies.   Defendant owes Linda compensation for the entire day and reinstatement of her sick leave.

24.     The injury to Linda's thumb did not impair her ability to perform her duties as a 204b supervisor.

25.     On the afternoon of Monday, November 27, 2017 Linda was working her 204b assignment at Sun City West when she received an e-mail from OIC Zavala directing her to return to work at Peoria on December 16, 2017 despite the fact Linda was scheduled to work the 204b assignment until December 31, 2017.

26.     On November 28, 2017 Linda asked Zavala why he took her off the 204b detail early.  Zavala responded that he took her off the 204b detail because she injured herself and could not work on Saturday, November 25, 2017.

27.     Linda told Zavala she felt he was retaliating against her because of her prior EEO activities.

28.     Zavala denied he retaliated against Linda responding "how would it look" and that "he doesn't have to provide [Linda] with any training towards advancement."

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

Ignoring their agreement to extend the 204b assignment until December 31, 2017, Zavala told Linda he gave her "90 days and that's enough." This was not a true statement as Linda had not worked as a 204b for 90 days.

29. Linda had filed EEOs on her own behalf and had assisted and/or participated in EEO activities on behalf of Anthony Miano, her husband and other employees.

30. Zavala was aware of Linda's prior protected EEO activities.

31. On December 15, 2017, Zavala assigned Linda to work in the parking lot at the Peoria Post Office for a total of 9.2 hours per day. During this time Linda was to stand or sit in the parking lot and watch the postal vehicles leave the lot. She was permitted to sit on an unsteady and unsafe stool that did not have a back for support or she could stand during the parking lot assignment.

32. The first day of the parking lot assignment, Linda brought a camping chair from home that had a back (back support) and a cup holder. Zavala called Linda at the office and told her not to use the camping chair." Zavala bragged that he "didn't even need to let [Linda] sit at all, it was courtesy."

33. On January 18, 2018 USPS removed Linda from active duty and placed her on leave without pay ("LWOP") pending the outcome of her OWCP claim purportedly because there were no positions that would accommodate Linda's job restrictions. Therefore Linda was forced to take leave without pay to cover her absence.

34. On or about May 1, 2018 Linda's physician completed a U.S. Department of Labor, Work Capacity Evaluation which directed Linda "can work with restrictions, and that she should "avoid repetitive activity with right hand, no forceful grasping with right hand, no driving postal vehicle."

35. Rather than assign Linda to a limited or light duty assignment such as answering telephones or similar work where she could work within the restriction order by her physician, Linda was placed on LWOP pay from January 18, 2018 until January 18, 2019. By this action USPS totally precluded Linda from returning to any, much less full-time, employment, and precluded her from earning compensation for a year.

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

36. During all relevant times USPS had a Limited Duty Program Management, HBK EL-505, Injury Compensation which was in effect and stated in pertinent part in its handbook:

> This chapter addresses limited duty provided to an employee who has physical limitations identified by a qualified treating physician stemming from an on-the-job injury or illness. The limited duty program is designed to accommodate injured employees who are temporarily unable to perform their regular functions.
>
> Effective utilization and management of limited duty assignments permit employees to work within their medically prescribed physical restrictions. Limited duty often accelerates recuperation as employees generally recuperate faster if they are as active as possible. Moreover, limited duty employees retain the discipline of got to work every day: continue their contribution to the USPS, and are regarded as productive workers. Finally, since limited duty employees work at the job site, they are often motivated to return to their regular job as soon as possible rather than continue doing a lesser skilled limited duty assignment. Early return to the regular job is the ultimate objective of the limited duty program.
>
> Limited duty is an integral aspect of injury compensation program administration and, if managed effectively makes a significant contribution to cost containment and control initiatives.

37. The Limited Duty Program also provides:

> USPS has legal responsibilities with job-related disabilities under OPM regulations. Specifically, with respect to employees who partially recover from a compensable injury, the USPS must make every effort to assign the employee to limited duty consistent with the employee's medically defined work limitation tolerance. The USPS, in assigning employees to limited duty, must minimize any adverse of disruptive impact on the employee. (ELM 546.141).

38. The Limited Duty Program has procedures for establishing/determining offering and tracking limited duty assignments and for following-up after the assignment is offered.

39. USPS's treatment of Linda was inconsistent with its obligations in its policies, procedures, Collective Bargaining Agreement, oral and written representations to is employees.

40.     Contrary to its policies and practices regarding on the job injuries USPS did not permit Linda to work a limited duty assignment on December 2nd and 9th, instead it required Linda to use sick leave.

41.     Linda made multiple requests to management to obtain a work assignment for work within her restrictions including making a written request to Defendant.

42.     During this period Defendant did not make any effort to contact Linda.

43.     At all times relevant to this complaint, plaintiff has been ready, willing, and able to perform a limited or light duty job assignment.

44.     Instead of providing Linda with a limited or light duty assignment as required by Defendant's policies, Defendant ordered Linda to attend a meeting with it District Reasonable Accommodations Committee ("DRAC") knowing that according to USPS policies Linda did not meet the definition of a qualified individual with a disability as required to receive an accommodation through DRAC.  Consistent with USPS policies the DRAC would declare her ineligible for an accommodation and could potentially terminated from Defendant's employ.

45.     Defendant assertions that in having Linda meet with the DRAC it was simply attempting to find an accommodation for Linda was disingenuous and not supported by the facts.

46.   Linda attempted to discuss the matter with Post Office Operations Manager ("POOM") Tina Sweeney ("Sweeney") who ignored Linda's efforts and never returned Linda's telephone call, refusing to talk with Linda.

47.     Sweeney had made known she was against Linda being advanced into management because of Linda's prior EEO activities.

48.     The Collective Bargaining Agreement between USPS and the National Rural Letter Carriers' Association provided in pertinent part:

Article 2        Non-Discrimination and Civil Rights

Section 1.  Statement of Principle
The employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age or mental statue.  In addition, consistent with the other provisions of

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

this Agreement, there shall be no unlawful discrimination against disabled employees, as prohibited by the Rehabilitation Act.

Article 13    Non-Discrimination and Civil Rights

Section 1.    Assistance for Employees
The Employer will make an effort to assist employees who through occupational injury or occupational illness are unable to perform their regularly assigned duties.  This effort will consist of possible assignment to limited duty work if such is available.

Section 2.    Federal Employees' Compensation Act
It is understood that the provisions of this Agreement are subject to the obligations and responsibilities imposed by the Federal Employees' Compensation Act and its implementing regulations. Recognizing the mutual obligation to be fully responsive to the requirements of the federal Employees' Compensation Act, the parties will cooperate in making every effort to insure that employees with job-related illnesses or injuries are returned to duty subject to their medical restrictions.

49.    At all times relevant there existed an implied covenant of good faith and fair dealing implied by law into the employment relationship between Linda and USPS evidenced by various written policies and documents including the Collective Bargaining Agreement, oral representations and by the entire course of conduct by defendants which included, but was not limited to, the following terms and conditions:

a.  USPS would not subject Linda to different standards of conduct than other employees;
b.  USPS would exercise proper control over its supervisory employees and would further ensure that such supervisory employees would not harass, intimidate, discriminate against, take reprisals against or insult or injure the rights of its employees;
c.  USPS would give full cooperation to Linda in her performance of the collective bargaining agreement, would refrain from doing any act which would prevent or impede Linda from performing all of the conditions of the agreement to be performed by Linda, and would refrain from doing any act that would prevent or impede Linda from enjoyment of the fruits of said agreement.  Specifically, this implied covenant of good faith and fair dealing required USPS too fairly, honestly and reasonably perform the terms of the agreement.

50.    Despite the representations made to Linda and the reliance she placed on them, USPS engaged in a continuous course of conduct in which it failed to carry out its responsibilities and promises not limited to the following ways:

Kirtley Wells Law Office

4742 N. 24ᵗʰ Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

- 8 -

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

a. USPS subjected Linda to different standards of conduct than other employees;
b. USPS failed to exercise proper control over its supervisory employees and further failed to ensure that such supervisory employees did not harass, intimidate, discriminate against, take reprisals against, or insult or injure the personal relations or rights of plaintiff, but rather permitted its supervisory employees did not harass, intimidate, discriminate against, take reprisals against, or insult or injure Linda;
c. USPS failed to exercise reasonable and adequate supervision over the work place, thereby permitting Linda to be subjected to harassment, intimidation and reprisal and discrimination;
d. USPS failed to exercise reasonable and adequate supervision over its employees, thereby permitting such other employees to interfere with Linda's ability to perform her job duties and/or enjoy the fruits of Linda's employment with USPS;
e. USPS further engaged in a course of conduct with the intent and effect of making Linda's work environment unreasonably burdensome and oppressive.

51. As a proximate result of the aforementioned, Linda suffered and continues to suffer substantial losses in earnings, deferred compensation, and other employment-related benefits which Linda would have received, all to Linda's damage in an amount unknown at this time, but which will be demonstrated according to proof at the time of trial.

## Protected Activities

52. While employed by Defendant Linda opposed actions by Defendant made illegal by Title VII and the Rehabilitation Act some of which are listed herein.

53. On or about December 13, 2011 Anthony Miano, Linda's husband filed EEO 4E-852-0011-12 alleging discriminatory harassment on the basis of mental disability and retaliation for several violations of the Rehabilitation Act. Linda served as Anthony Miano's representative in this matter. Linda also personally filed an EEO alleging that Finance Supervisor Eddie Goodman responded "F**K the Mianos" referring to both Linda and Anthony Miano and denied Anthony Miano auxiliary assistance. Albert Zavala was at the Peoria Main office when these events occurred and was aware that Anthony and Linda filed EEO charges.

54. On or about March 26, 2012 Anthony Miano filed EEO 4E-852-0010-12 alleging violations of the Rehabilitation Act. Linda served as his representative during the EEO. Defendant's DRAC declined to accommodate Anthony's disability. Albert

Zavala, Acting Postmaster and was aware of Linda's EEO activities as it relates to this matter.

55.     On or about April 2012 Linda Miano filed EEO No 4E-852-0100-12 after Linda was suspended for 14-days in violation of the Rehabilitation Act. Albert Zavala was present at a meeting when Linda informed Defendant that Anthony Miano was disabled and requested an accommodation for him. Zavala was also aware Linda filed the EEO 4E-852-0100-12.

56.     On September 13, 2012 Anthony Miano filed a formal complaint, EEO 4E-852-0138-12 alleging violations of the Rehabilitation Act including harassment and retaliation. During the events culminating in this EEO, USPS management admitted Linda informed management including Albert Zavala that Anthony Miano had a disability and that he required an accommodation. Anthony Miano alleged violations of the ADA/Rehabilitation Act when he and Linda suffered harassment and he was given letters of warnings and terminated by USPS management including Albert Zavala. Linda Miano advocated for and served as Anthony Miano's representative in this matter. Albert Zavala was identified as a witness in this matter.

57.     On or about March 13, 2013, an Acknowledgment and Order was issued regarding Anthony Miano's request for an administrative hearing on EEO 4E-852-0138-12. Linda was to be a witness in this matter. On or about June 2013 Albert Zavala became Acting Postmaster of Peoria Main.

58.     On February 14, 2014 Anthony Miano elevated the administrative hearing for EEO 4E-852-0138-12 to U.S. District Court when he filed *Anthony Miano v. USPS,* CV 14-0291-PHX-HRH alleging violations of the Rehabilitation Act and the allegations in EEO 4E-852-0138-12. Linda Miano was identified as a witness in this matter. Tina Sweeney was Postmaster of Peoria Main, Albert Zavala was part of her management team and both were aware of Linda's protected activities.

/ / /

/ / /

/ / /

Kirtley Wells Law Office

4742 N. 24ᵗʰ Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

## Sweeney's Discriminatory Animus

59.     On or about December 16, 2016 carrier WD was involved in a dispute at Peoria Main, walked off the floor and threatened to retain a lawyer against USPS. The following day, Postmaster Sweeney held a meeting and informed the employees they were not permitted to talk to WD and would be terminated if they spoke with him. In response Linda told Sweeney she was violating the employee's civil rights by threatening to terminate them for speaking with WD. That same day Sweeney called Linda into her office and began yelling that Linda that she did not understand the situation. In a loud aggressive, angry and intimidating tone Sweeney called Linda a "trouble maker." Displaying her retaliatory animus Sweeney accused Linda of causing trouble in the workplace by filing EEO's and inciting other employees to file EEOs.

60.   As a result of Linda's protected activities USPS embarked on a campaign of harassment and retaliation against her some of which is outlined herein.

61.     Sometime in the spring of 2017 Linda asked Sweeney if she could stand up in a 204b position. Sweeney shook her head signaling "no" to Linda's request. Sweeney did not verbally respond to Linda and more significantly offered no explanation for denial of Linda's request.

62.     Later Linda approached Zavala who was serving as the OIC and requested she be allowed to train in the 204b position. Zavala told Linda that he spoke with Sweeney about her request and Sweeney said "no" she would not be allowed to work as a 204b. He offered no explanation as to why she her request was denied.

63.     After Linda had made repeated requests for a 204b assignment, Linda was given a 204b assignment at the Sun City West Office.

## Continued Retaliation

64.     USPS's retaliatory campaign also including making false statements against Linda on or about February 1, 2018 regarding the circumstances giving rise to Linda's OWPC claim.

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

65.     Also as part of its retaliatory campaign USPS gave Linda false information regarding her eligibility to file a claim regarding her on-the-job injury.  Linda sought to file a CA2 claim with OWCP to re-open her original injury claim regarding her thumb however, she was informed by the Injury Compensation Specialist, LaValerie Lopez that she could not re-open her original claim but instead was required to file a new claim.

66.     Ms. Lopez was aware of Linda and her husband's prior EEO protected activities and exhibited hostility towards them related to their EEO activities and had input and influence with USPS management regarding it actions towards Linda.

67.     Additionally on May 8, 2018 in retaliation for her protected activities USPS informed Linda, she was not eligible for a light duty assignment because "the rural carrier contract prohibits light duty" and that consequently she could seek reasonable accommodation through DRAC, seek reassignment or disability reassignment.

68.     As a result of Defendant's unlawful retaliation against Linda, she has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation and other pecuniary and non-pecuniary losses.

69.     The reasons given by Defendant for its violation of Linda's rights are pretext to guise its unlawful retaliation.

70.      Linda seeks make whole relief for all earnings and other benefits she would have received but for USPS's retaliation including wages, pension contributions, and other lost benefits, and compensatory damages.

**COUNT I**
**RETAILATION and HARASSMENT**
**VIOLATIONS OF TITLE VII and the REHABILITATION ACT OF 1973**

71.     Plaintiff incorporates by reference as if fully set forth herein all allegations contained in the paragraphs above.

72.     Based on the facts plead throughout this Complaint,  Defendant did and continues to retaliate and harass against Linda by refusing to provide her with a light or limited duty assignment that would accommodate her work incurred injuries, in violation of the Rehabilitation Act and Title VII.

73. Linda's protected activities include filing personal EEO complaints, opposing actions made illegal by Title VII and the Rehabilitation Act,  participating in activities that oppose discrimination under both laws and representing other USPS employees in the exercise of their rights under Title VII and the Rehabilitation Act.

74. Linda informed her manager that she believed that he was retaliating against her because of her prior protected activities.  In response Defendant further harassed and retaliated against Linda by amongst other things removing her from her limited/light duty assignment and treating her differently from other employees.

75. As a direct and proximate result of Defendant's retaliation and harassment in violation of Title VII and the Rehabilitation Act, Linda suffered damages including lost wages, lost benefits, embarrassment, humiliation, garden variety mental and emotions distress, all in an amount to be proven at trial.

76. Further, as a direct and proximate result of defendant's violations of Title VII and the Rehabilitation Act Linda has incurred medical and related expenses, costs and attorney's fees.

77. Plaintiff request the Court enjoin defendant from engaging in employment practices, policies, customs, usages and procedures that operate to retaliate against employees that have opposed discrimination on the basis of practices made unlawful by Title VII and the Rehabilitation Act.

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78. Plaintiff incorporates by reference each of the allegations set forth in the above paragraphs as though fully alleged herein.

79. The effect of the practices complained of herein above has been to deprive Linda Miano of equal employment opportunities and otherwise adversely affect her status as an employee because she opposed discrimination made unlawful by Title VII and the Rehabilitation Act.

80. Defendants' conduct was in reckless disregard of the emotional distress, anxiety, mental distress, pain and suffering, stress, and ordeal that Defendants knew

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

and/or should have known would occur or was likely to occur as a result of its harassment and retaliation against Linda.

81.     The acts complained of above were extreme and outrageous as to go beyond all possible bounds of decency and severe and pervasive in that they changed the terms and conditions of Linda's employment as referenced *supra*.

82.     As a direct and proximate result of Defendants' extreme and outrageous conduct, Linda Miano has been harmed in amounts to be proven at trial.

83.     As a direct and proximate result of the actions and inaction of Defendants as described herein, Linda Miano has suffered and continues to suffer damages including, but not limited to, consequential economic damages including but not limited to back pay and front pay, compensatory damages, benefits, pain and suffering, mental anguish, stress, distress and loss of enjoyment of life.

## JURY DEMAND

Plaintiff demands trial by jury of all claims and causes of action so triable.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that this Court:

1.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which violates the retaliation provisions of Title VII and the Rehabilitation Act;

2.     Order Defendant to institute and carry out policies, practices and programs consistent with the anti-retaliation mandates of Title VII and the Rehabilitation Act and which eradicate the effects of Defendant's past and present unlawful employment practices;

3.     Require that Defendant train its supervisors and management level employees about Defendants policies and procedures regarding its Limited Duty Program and light duty policies and procedure;

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

- 14 -

4.    Order Defendant to make Plaintiff's whole, by providing appropriate back pay and benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

5.    Order defendant to pay Linda compensatory damages for its violations of Title VII, the Rehabilitation Act and intentional infliction of emotional distress in an amounts to be proven at trial;

6.    Order Defendants to make whole Linda Miano by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including damages for emotional pain and suffering, including but not limited to distress, humiliation, embarrassment, emotional distress, anxiety, and ordeal in amounts to be determined at trial;

7.    Order defendant to pay plaintiff reasonable attorneys' fees and costs/expenses incurred in this action;

11.    Order defendant to pay plaintiff interest on such damages as are appropriate, including pre- and post-judgment interest; and

12.    Grant such other and further relief as this Court may deem proper and just.

DATED this 8th day of February, 2019.

Kirtley Wells Law Office

By: /s/Patricia Kirtley Wells
Trisha Kirtley
4742 N. 24th Street, Suite 300
Phoenix, AZ 85016
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing.

/s/Trisha Kirtley
_____
Trisha Kirtley

Kirtley Wells Law Office

4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424